709 F.2d 139
 Jonathan M. CHARRY, Plaintiff-Appellant,
v.
Judy E. HALL, individually and as Executive Secretary of the
State Board for Psychology of the State Education Department
of the University of the State of New York, Raymond D.
Salman, individually and as Director of Professional
Licensing of the State Education Department of the
University of the State of New York, Gordon M. Ambach,
individually and as Commissioner of Education of the
University of the State of New York, Frank C. Abbott,
individually and as Assistant Commissioner for the State
Education Department of the University of the State of New
York, The State Education Department, The University of the
State of New York and The New York State Board of Regents,
Defendants-Appellees.
 No. 1133, Docket 82-7764.
 United States Court of Appeals,
Second Circuit.
 Argued April 11, 1983.
Decided May 19, 1983.
 
 Richard M. Kraver, New York City (Kraver & Martin, New York City, of counsel), for plaintiff-appellant.
 Ellen Bronzo, Asst. Atty. Gen., State of N.Y., New York City (Robert Abrams, Atty. Gen., State of N.Y., George Zuckerman, Deputy Sol. Gen., New York City, of counsel), for defendants-appellees.
 Before MANSFIELD, VAN GRAAFEILAND and FRIEDMAN,* Circuit Judges.
 MANSFIELD, Circuit Judge:
 
 
 1
 Dr. Jonathan M. Charry appeals from a judgment of the Southern District of New York, Milton Pollack, Judge, dismissing for lack of jurisdiction his complaint under 42 U.S.C. Sec. 1983, which sought damages and an injunction restraining various New York State agencies and officials from refusing to permit him to take an examination required by state law to enable him to qualify for a license as a psychologist. Charry, who holds a Ph.D. degree from New York University in a program formally entitled "Human Relations and Social Policy" but which is in fact a curriculum in applied social psychology, contends that the defendants deprived him of his federal constitutional right to procedural due process by refusing him permission to take the examination. We affirm on the ground that, regardless whether defendants made an erroneous decision on the merits, they accorded Charry adequate procedural due process.
 
 
 2
 Under New York law a person may not practice as a "psychologist" unless he receives a state license to do so, Education Law, Art. 153, Secs. 7600, et seq. (McKinney 1972 & Supp.1982). The State Education Department of the University of the State of New York is the administrative agency having responsibility for the licensing of psychologists and the New York State Board of Regents determines the nature and quality of educational programs required for such licensure. The Board of Regents, in turn, has appointed a State Board of Psychology to evaluate the qualifications of applicants for licensure under the standards set forth in Sec. 7603 of the Education Law.[1] That section provides in pertinent part that to qualify for a license and to take the examination specified by the Board the applicant must have received "a doctoral degree in psychology, granted on the basis of completion of a program of psychology registered with the department [of Education] or the substantial equivalent thereof ...." N.Y.Educ.Law Sec. 7603(2) (emphasis added). The purpose of this requirement was stated by the legislature when it added this provision in 1970:
 
 
 3
 "The definition of the doctoral degree required for the issuance of a certificate as a psychologist ... contained in [the former section] is so broad as to permit the certification of persons as psychologists who lack appropriate training in psychology. This broad language has necessitated an extensive screening process to identify those applicants whose training in psychology is inadequate. This amendment would clarify this requirement to specifically provide that applicants for certification as psychologists must have received a doctoral degree in psychology upon completion of a psychology program registered by the [Education] Department, or its substantial equivalent." 1970 N.Y. Laws 2997-98.
 
 
 4
 Regulations issued by the Commissioner of Education (8 N.Y.C.R.R. Secs. 50, et seq.) provide procedures for the registration with the Board of educational programs deemed sufficient to render graduates eligible for licensure in professions, including psychology. See Secs. 52.1 and 52.10. When doctoral programs in psychology cannot be appraised (e.g., because they are conducted by distant out-of-state institutions and cannot be verified by visitation), the applicant may take a prerequisite examination to qualify for the licensing examination. Sec. 72.1(b).[2] However, the Commissioner has not promulgated any regulations establishing standards for determining when a program not registered with the State Education Department is "the substantial equivalent" of an approved, registered program. The present dispute arises, in part at least, out of this deficiency.
 
 
 5
 A candidate's application for licensure as a psychologist is first considered by the Board's Education Evaluation Committee in Psychology. If the applicant is turned down "on grounds of unsatisfactory experience," see Sec. 72.1, which presumably means completion of a scholastic program deficient in acceptable psychology courses, the applicant may appeal to the Commissioner.[3] In addition a rejected candidate may first appeal to the Department of Education's Board of Psychology. If dissatisfied with its decision he may then take his case to the Department's Committee on the Professions and, if rejected by it, to the Board of Regents. Finally he may obtain judicial review of the determination of the Board of Regents by instituting an Article 78 proceeding in the Supreme Court of the State of New York.
 
 
 6
 On July 27, 1978, Dr. Charry, who had in June 1976 received a Doctor of Philosophy Degree from New York University ("NYU") in a program entitled "Human Relations and Social Policy," which was actually a program in applied social psychology, applied to the State Education Department for admission to the licensing examination for psychologists. As requested by the Department, a "Form 10-PSY" was filled out by Prof. Gilbert M. Trachtman of NYU, the Program Director for NYU's psychology programs and the designated liaison officer for New York State Psychology Licensing at NYU's School of Education, Health, Nursing and Arts Professions. In response to questions on the form Prof. Trachtman stated that NYU's doctoral program in "Human Relations and Social Policy," from which Charry had received his degree, was not an offering of NYU's psychology department and was not designed specifically as preparation for the professional practice of psychology. On August 18, 1978, the Education Evaluation Committee in Psychology of the State Education Department notified Charry that his application was disapproved because his doctoral degree was not one in psychology and therefore did not meet the requirements of the state statute and regulations.
 
 
 7
 Charry next sought administrative review. His application was first presented to the New York State Board for Psychology, which rejected it. He then appealed to the Committee on the Professions, before which he appeared personally. Upon being turned down by the Committee he appealed to the Board of Regents, which on October 22, 1979 denied his application because of the inadequacy of his qualifications. Charry did not seek state judicial review by way of an Article 78 proceeding.
 
 
 8
 Dr. Charry at all times took the position that although NYU may have failed to register its doctoral program in Human Relations and Social Policy with the Department as a program in psychology, that program qualified as "the substantial equivalent" of a registered program as that term is used in Education Law Sec. 7603(2) because the substance of its curriculum was in psychology and it was designed as a program in applied psychology.[4] In December 1980 Prof. Frank B.W. Hawkinshire, the director of the NYU Human Relations and Social Policy program, wrote a letter to the Board stating unequivocally that the program is one in psychology and setting forth in detail facts and reasons for his conclusions. Prof. Hawkinshire enclosed a copy of an independent evaluation made by Dr. David Stang, former Educational Affairs Officer of the American Psychological Association, who was then responsible for evaluating and certifying the Association's clinical programs and who has wide experience in such matters. Stang agreed with Hawkinshire's analysis and characterized NYU's Human Relations and Social Policy Program as "one of the finest [programs in applied social psychology] in the world."
 
 
 9
 In March 1982, Charry requested that the Education Department reconsider his application in light of the opinions expressed by Dr. Hawkinshire and Dr. Stang. On April 6, 1982, the Department denied this request on the grounds that Dr. Hawkinshire's views were "not supported by the officer designated by the University to make this certification" (i.e., Prof. Gilbert M. Trachtman), and that a review of Dr. Charry's program of study indicated that it was "deficient in the basic areas of psychology."[5]
 
 
 10
 On July 30, 1982, Prof. Trachtman, now alerted to Prof. Hawkinshire's opinion, wrote a letter to the State Education Department about another applicant (Dr. Marvin Aronson) stating that he could not answer "Yes" or "No" on Form 10-PSY to the question whether NYU's Human Relations and Social Policy program was designed specifically as preparation for the professional practice of psychology because there had "never been a substantive evaluation" of the program and that his "No" answer with respect to Dr. Charry "was not based on any substantive review of the Program's structure and content but rather on the absence of any history of formal peer review of this Program within the official School mechanisms for declaring a program to be one preparing students for the professional practice of psychology."
 
 
 11
 On August 6, 1982, Dr. Charry asked the Board to accept a new application from him for an examination then scheduled for October 8, 1982, or, in the alternative, for a pre-examination pursuant to 8 N.Y.C.R.R. Sec. 72.1(b), in view of Dr. Trachtman's letter with respect to Aronson's application. This request was denied. Thereupon, on September 1, 1982, Charry commenced the present action by filing a seven-count complaint. The first four counts, alleging a violation of Title 42 U.S.C. Sec. 1983 and invoking jurisdiction under 28 U.S.C. Secs. 1343 and 1331, claim that the defendants denied Charry liberty and property without due process of law in violation of the Fourteenth Amendment. The Sixth Count seeks attorneys' fees under 42 U.S.C. Sec. 1988. The last two counts, based on pendent jurisdiction, claim violation of the Due Process Clause of the New York State Constitution. The complaint sought injunctive relief and damages.
 
 
 12
 After a temporary restraining order was issued by Judge Palmieri on September 9, 1982, Judge Pollack, following a brief, cursory oral hearing, denied Charry's application for injunctive relief and dismissed the complaint for lack of subject matter jurisdiction upon defendants' oral motion, made at the court's suggestion. The district court, however, did not base its decision on the ground that Charry had been accorded due process by the defendants, which was the issue raised by the complaint, but on the ground that the case rested on the interpretation of the "equivalency" provision of a state statute, Education Law Sec. 7603(2), and that such an interpretation could only be made by state authorities. On September 29, 1982, reargument was denied on the ground that Dr. Charry's Ph.D. in Human Relations and Social Policy was not the equivalent of a doctorate in psychology. In reaching this decision Judge Pollack relied upon a letter dated September 22, 1982, from Prof. Trachtman to a third party, furnished to Charry and the court by the defendants a few minutes before reargument, in which Trachtman once more changed his position, stating that it had been agreed that NYU's Human Relations and Social Policy Program should not be represented as a program in psychology. However, on October 5, 1982, NYU's General Counsel wrote Charry that Trachtman's letter of September 22, 1982 did not represent NYU's official position since NYU had never evaluated the Human Relations program for substantial equivalency, and that this was an issue for determination by the State Education Department.
 
 DISCUSSION
 
 13
 The principal question raised by this action is whether the state agencies and officials named as defendants denied Dr. Charry a property or liberty right without due process of law in violation of the Fourteenth Amendment. The answer requires us to decide the threshold issue of whether the right to sit for an examination for admission to a profession represents a constitutionally protectible property or liberty interest comparable to a license already granted to practice that profession. See, e.g., Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). If not, the complaint would be dismissible as a matter of law.
 
 
 14
 The right to take an examination is hardly the equivalent of the grant of the license for which it is taken; the applicant may fail the examination, in which event, unlike the successful licensee, he will not have any property interest entitled to due process protection. In the context of licenses to operate a business, Judge Friendly has noted that "[r]evocation of a license is far more serious than denial of an application for one; in the former instance capital has been expended, investor expectations have been aroused, and people have been employed." Friendly, "Some Kind of Hearing," 123 U.Pa.L.Rev. 1267, 1296 (1975). On the other hand, arbitrary rejection of an application made by a fully qualified candidate can work a serious injustice on the applicant, depriving him of even the opportunity to obtain the license.
 
 
 15
 We are persuaded that an applicant satisfying statutory prerequisites has a "legitimate claim of entitlement" to take the examination for the professional status of psychologist. Board of Regents v. Roth, supra, 408 U.S. at 577, 92 S.Ct. at 2709. See in accord Pence v. Kleppe, 529 F.2d 135, 140-41 (9th Cir.1976) (applicants for land grants under the Alaska Native Allotment Act entitled to due process protections); Raper v. Lucey, 488 F.2d 748 (1st Cir.1973) (applicants for drivers' license entitled to due process); Hornsby v. Allen, 326 F.2d 605 (5th Cir.1964) (applicants for liquor license entitled to due process); Kinderhill Farm Breeding Associates v. Appel, 450 F.Supp. 134 (S.D.N.Y.1978) (applicant for mobile home license). Decisions to the contrary are distinguishable on the ground that, unlike the present case, they involved statutes granting broad and almost unlimited discretion to the licensing authority to deny the application. See Erdelyi v. O'Brien, 680 F.2d 61 (9th Cir.1982) (application for license to carry a concealed weapon under statute providing that sheriff "may" issue such a permit if "good cause" is shown); Jacobson v. Hannifin, 627 F.2d 177, 179-80 (9th Cir.1980) (application for license to operate a casino under statute giving agency "full and absolute power and authority to deny any application for any cause deemed reasonable by [the agency]"); Medina v. Rudman, 545 F.2d 244, 250-51 (1st Cir.1976) (application for license to own a racetrack made pursuant to a statute providing that agency "may" issue a license if it is satisfied that all rules and regulations will be complied with), cert. denied 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 177 (1978).[6]
 
 
 16
 Since the present complaint therefore raises a federal due process issue the district court erred in dismissing it for lack of subject matter jurisdiction. Bell v. Hood, 327 U.S. 678, 682-85, 66 S.Ct. 773, 776-77, 90 L.Ed. 939 (1946). The action can hardly be characterized as "so attenuated and unsubstantial as to be absolutely devoid of merit" or as "essentially fictitious," Hagans v. Lavine, 415 U.S. 528, 536-38, 94 S.Ct. 1372, 1378-79, 39 L.Ed.2d 577 (1974). In our view the district court also erred in dismissing the complaint for lack of "substantial equivalency" (as that term is used in Education Law, Sec. 7603(2)) between Dr. Charry's Ph.D. from NYU's Human Relations and Social Policy Program and a doctorate from a similar program in psychology registered with the State Board. A substantial issue of material fact was raised by Dr. Charry who introduced evidence through the Hawkinshire and Stang statements that, despite the nomenclature used in its title, NYU's Human Relations and Social Policy Program is directed toward preparation for practice in applied psychology. However, we need not remand the case for a trial of that issue because the undisputed facts demonstrate that, even assuming Dr. Charry had a property interest entitling him to due process, he was accorded such process by the defendants.
 
 
 17
 As the Supreme Court stated in its landmark decision in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), due process is a flexible concept. Id. at 334, 96 S.Ct. at 902. What process is due in a particular case depends on the court's appraisal of three factors: (1) the nature of the private interest sought to be protected; (2) the risk of erroneous deprivation of that interest through the procedure used and the probable value of additional safeguards; and (3) the government's interest, including the fiscal and administrative burdens that would be placed on it by additional procedures. Id. at 335, 96 S.Ct. at 903.
 
 
 18
 In the present case the private interest, i.e., the right to take an examination, while important enough to be classified as a constitutionally protectible property interest, hardly approximates the importance of a vested property right such as a license itself. Although Charry has been delayed by defendants' actions in taking the examination, he does not appear to have been foreclosed forever from doing so. If the defendants erred in their equivalency evaluation or in failing to make such an evaluation he may presumably reapply or request further reconsideration on the basis of a more detailed exposition of equivalency.
 
 
 19
 The administrative review procedure provided by the state, which we have outlined, is extensive and appears to us reasonably calculated to uncover and correct errors committed in denying an applicant the right to sit for an examination. Dr. Charry was given notice at the outset by the Department's Education Committee of the reason for rejection of his application. He was then permitted to introduce by letters and affidavits detailed factual statements on the issue of substantial equivalency and to appear personally before the Committee on the Professions. Finally the Board of Regents reviewed the issue and the supporting data. Upon reconsideration in light of the additional evidence offered by Charry (the Hawkinshire and Stang statements), the State Education Department adhered to its earlier decision, stating:
 
 
 20
 "A review of the list of courses in the program in human relations and the parallel list of equivalent New York University psychology courses, together with transcripts and other information previously submitted indicate that you have a sufficient number of psychology credits in total, but that your program of study is deficient in the basic areas of psychology." Letter of April 6, 1982, from Frank C. Abbott, Assistant Commissioner for the Professions, State Education Department.
 
 
 21
 It may be that the Education Department should have dug deeper and obtained additional materials that would have assisted in resolving the equivalency issue. If so, part of the fault lies in Prof. Trachtman's initial conclusory answer on the 10-PSY form to the effect that NYU's Human Relations program was not designed to prepare Dr. Charry for the professional practice of psychology, an answer which Prof. Trachtman later retracted but then re-retracted, at least in part. With the aid of hindsight it appears that the State Education Department would have been better advised to establish standards for "substantial equivalency" and to independently investigate the facts with respect to NYU's courses in Human Relations rather than rely on Prof. Trachtman, particularly in view of the suggestion that he may have been motivated by an intramural dispute between his own department at NYU and Prof. Hawkinshire's program. Lastly, assuming the evidence did not permit resolution of the substantial equivalency issue, we find it difficult to understand why the state would not allow Dr. Charry to take a pre-examination, which is the procedure followed with respect to out-of-state applicants whose degree qualifications cannot be verified.
 
 
 22
 Dr. Charry argues that he was entitled to an evidentiary hearing as part of the state's administrative review of his application, i.e., a trial-type hearing at which he would be represented by counsel and would have the right to cross-examine Prof. Trachtman and other witnesses. We disagree. Applying the standards of Mathews v. Eldridge, supra, we are satisfied that the review procedures afforded him adequate due process. The possible occurrence of an error in one or two cases does not call for an expansion of the review system to add cumbersome and expensive evidentiary hearings with detailed findings, at least when the only property at stake is the right to sit for an examination. To do so would heap an excessive burden on the state in cases in which applications are denied. The Due Process Clause of the Fourteenth Amendment does not guarantee errorless administrative decisions. It assures only a procedure that is reasonably calculated to protect a person's property right. The review procedure here met that standard.
 
 
 23
 In view of appellant's failure on the undisputed facts to allege or show a denial of constitutional due process, the dismissal of the complaint is affirmed.
 
 VAN GRAAFEILAND, Circuit Judge, concurring:
 
 24
 I concur in the result.
 
 
 
 *
 Of the United States Court of Appeals for the Federal Circuit, sitting by designation
 
 
 [1]
 Section 7603 of the Education Law provides that:
 "To qualify for a license as a psychologist, an applicant shall fulfill the following requirements:
 "(1) Application: file an application with the department;
 "(2) Education: have received an education, including a doctoral degree in psychology, granted on the basis of completion of a program of psychology registered with the department or the substantial equivalent thereof, in accordance with the commissioner's regulations;
 "(3) Experience: have two years of supervised employment or engagement in appropriate psychology activities satisfactory to the board and in accordance with the commissioner's regulations;
 "(4) Examination: pass an examination satisfactory to the board and in accordance with the commissioner's regulations;
 "(5) Age: be at least twenty-one years of age;
 "(6) Citizenship: meet no requirement as to United States citizenship;
 "(7) Character: be of good moral character as determined by the department; and
 "(8) Fees: pay a fee to the department for admission to the examination and for initial license of forty dollars, for each reexamination fifteen dollars and for each biennial registration fifteen dollars."
 
 
 [2]
 8 N.Y.C.R.R. Sec. 72.1(b) provides in pertinent part:
 "Prerequisite examination in psychology. In instances where doctoral programs in psychology are considered to be generally consistent with Section [52.10] of the Regulations of the Commissioner of Education but cannot be appraised in terms of substantial equivalency of subject matter and extent of training as provided under Section 7605, paragraph 1, subdivision d, by either documentation or visitation satisfactory to the Department, such substantial equivalency may be established by the passing of a prerequisite examination in psychology satisfactory to the Board of Examiners of Psychologists and the department prior to being admitted to the examination for certificate as psychologist."
 
 
 [3]
 8 N.Y.C.R.R. Sec. 72.1 provides in pertinent part:
 "Review of experience. Any person denied a certificate as psychologist by the Board of Examiners of Psychologists on the grounds of unsatisfactory experience may appeal to the Commissioner within 30 days after receipt of official notice of the board's determination. The appeal to the Commissioner should be made on the form which will accompany the official notice to the applicant. Review of an applicant's case will be limited to the material evaluated by the board and shall not include a personal appearance unless requested by the Commissioner."
 
 
 [4]
 Dr. Charry is currently an Assistant Professor of Physiological Psychology at Rockefeller University and an Adjunct Professor of Psychology at NYU
 
 
 [5]
 8 N.Y.C.R.R. Sec. 52.10 provides:
 "Psychology. A doctoral degree program shall require at least three years of full-time study or their equivalent including:
 (a) Seminars, tutorials, or other graduate level course work representing two years of full-time study or the equivalent.
 (b) At least 42 semester hours designed as preparation for the professional practice of psychology with a minimum of 24 of those hours selected from any five of the basic areas: experimental psychology, developmental psychology, individual differences, psychological tests and measurements, social psychology, statistical methods, history and systems of psychology, design of research, personality theory, learning theory, physiological psychology, abnormal psychology, comparative psychology, motivation and perception. The remaining 18 semester hours in psychology may be in the foregoing basic areas, in the following methods and procedures, or in a combination thereof: methods or procedures of interviewing, counseling or psychotherapy; constructing, administering or interpreting tests of mental abilities, aptitudes, interests, attitudes, personality characteristics, emotions or motivation; assessing public opinion. No more than 9 of these 42 semester hours shall be in any one of the aforementioned basic areas, methods or procedures of psychology.
 (c) The total curriculum shall contain preparation for initiating, conducting and evaluating research in psychology which can be supported by written evidence." (Emphasis added).
 
 
 [6]
 Since, as we discuss below, Charry was afforded adequate procedural protections in any event, we need not decide whether he has a protectible liberty interest in sitting for the licensing examination