Robert W. **DAMINO**, Plaintiff,

v.

Peggy **O'NEILL** as Executive Director of Creedmoor Psychiatric Center; Steven E. Katz, as Commissioner of New York State Office of Mental Health; and Board of Regents of the State of New York, Defendants.

No. CV 87–2003.

United States District Court, E.D. New York.

Sept. 28, 1987.

See also 508 N.Y.S.2d 618, 124 A.D.2d 271; 702 F.Supp. 954.

---

William D. Friedman, Hempstead, N.Y., for plaintiff.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City (Adina King, Asst. Atty. Gen., of counsel), for defendants.

## MEMORANDUM OF DECISION AND ORDER

MISHLER, District Judge.

Plaintiff brought this action pursuant to 42 U.S.C. § 1983, alleging that the defendants' revocation of his license to practice medicine, depriving him of his property right to employment as a physician and his license to practice medicine in New York, was a violation of due process of law. Plaintiff has also applied for a temporary restraining order, pursuant to Fed.R.Civ.P. 65(b), to stay the enforcement of the order revoking his license to practice medicine pending a final determination by the New York courts. Defendants move: (1) pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss this action on the grounds that plaintiff has failed to state a cause of action under 28 U.S.C. §§ 1331 or 1343; (2) this court should abstain under the *Younger* doctrine; and (3) any award of back pay is a matter for the state courts to decide. Defendants also seek attorney fees and costs under Fed.R.Civ.P. 11. For the reasons discussed below, defendants' motion to dismiss is granted.

*Background*

In July 1983, plaintiff, a physician licensed to practice in the State of New York, was charged with professional misconduct pursuant to N.Y.Educ.Law § 6509(9). The charges include: unprofessional conduct, gross negligence, gross incompetence, negligence and incompetence. Allegations made against the plaintiff included: sexual misconduct with, as well as mental and physical abuse of, one patient, the encouragement of questionable fraternization between patients, taking a patient who had been criminally institutionalized to an X-rated movie and subsequently threatening this same patient. Plaintiff was also charged with various controlled drug regulation violations, the practice of medicine while impaired, and habitual use of barbiturates and amphetamines. The latter two drug charges were eventually dropped.

Upon notification to the plaintiff of the charges and date of hearing, disciplinary proceedings were conducted by a panel of the New York Board for Professional Medical Conduct. In May 1984, the Hearing Committee issued a Report which made specific findings of fact, conclusions and recommendations to sustain the charges with some modifications.

In April 1985 the New York Commissioner of Health, upon review of the entire record of the proceedings, recommended that the hearing panel report be accepted in full. Thereafter, in November 1985, the Regents Review Committee unanimously recommended to the Board of Regents that the hearing panel's findings be adopted with minor modifications. On December 13, 1985 the Board of Regents voted to accept the findings of fact and conclusions of the hearing panel as modified by the Regents Review Committee. In January 1986, the Commissioner of Education of New York ordered the plaintiff's license to practice medicine revoked.

Pursuant to N.Y. Education Law § 6510–a(4) and Article 78, N.Y.C.P.R., on March 5, 1986, plaintiff brought a proceeding for review of the Commissioner's decision in the New York Supreme Court, Appellate Division. On May 12, 1986, the Appellate Division, Third Department granted plaintiff's motion to stay the order of revocation pending a decision. On October 9, 1986, the Appellate Division, Third Department unanimously confirmed the determination of the Board of Regents and dismissed plaintiff's petition.

By order to show cause, plaintiff moved before the Appellate Division for leave to appeal to the Court of Appeals and requested a stay of the enforcement of the October 9, 1986 order pending the determination of the motion and a request for a preliminary injunction. This request was denied and on June 17, 1987 plaintiff commenced an action in this court requesting a stay of the state court proceedings under Fed.R.Civ.P. 65(b) and a claim for relief under 42 U.S.C. § 1983. At that time plaintiff also requested that this court issue a temporary restraining order to stay the Appellate Division Court order to revoke his license pending the outcome of his § 1983 action. This court declined to grant plaintiff's motion for the temporary restraining order and on June 20, 1987 plaintiff surrendered his license to practice medicine. Before the court now is plaintiff's due process violation claim under 42 U.S.C. § 1983 and plaintiff's request for a stay of the state court order to revoke his license pending the outcome of plaintiff's appeal before the New York Court of Appeals.

### DISCUSSION

There are two issues before this court. The first is whether plaintiff has stated a cognizable claim under 42 U.S.C. § 1983. This statute provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applica-

ble exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Plaintiff alleges that defendants have deprived him of his property right to his license and employment and in doing so have violated plaintiff's right to due process of law. (Complaint ¶ 29). In his memorandum of law plaintiff argues that the state's revocation proceedings raise several constitutional procedural due process issues including: the use of negative inference, the hearing panel's act of taking official notice of findings from a prior administrative hearing, the use of negative inference from a witness' refusal to testify against plaintiff, and the use of sealed records. Plaintiff also alleges that the failure of the New York State courts to continue to stay the order of revocation until the appeal pending before the Court of Appeals is decided violates plaintiff's fourteenth amendment rights. (Complaint ¶ 35).

■ A complaint consisting of nothing more than vague allegations, blanket statements and setting forth no basis upon which a violation of the Civil Rights Acts can be established fails to state a claim under Fed.R.Civ.P. 12(b)(6). *See, e.g., Martin v. N.Y. State Dept. of Mental Hygiene,* 588 F.2d 371 (2d Cir.1978). The general rule is that in determining the sufficiency of a claim challenged under Rule 12(b)(6), the allegations of the complaint are taken to be true and construed most favorably to the pleader, *United States v. Mississippi,* 380 U.S. 128, 143, 85 S.Ct. 808, 816, 13 L.Ed.2d 717 (1965). However, complaints relying on 42 U.S.C. § 1981 *et seq.* are insufficient unless they contain some allegations of facts indicating a deprivation of civil rights. *See, e.g., Powell v. Jarvis,* 460 F.2d 551 (2d Cir.1972). In a § 1983 action, to withstand a Rule 12(b)(6) motion to dismiss, the plaintiff must demonstrate that the liberty, property or constitutional right abridged was without 'due process of law. *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). We find there are no facts presented in, or even suggested by, plaintiff's vague and conclusory allegations which would be sufficient to support his claims.

■ Plaintiff's license to practice medicine is a property right which is entitled to constitutional protection and which cannot be revoked without due process of law. *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971); *Horodner v. Cahn,* 360 F.Supp. 602 (E.D.N.Y.1973).

Due process is a flexible concept. *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976); *Charry v. Hall,* 709 F.2d 139 (2d Cir.1983). The fundamental requisites of due process are; (1) notice of charges; (2) the opportunity to be heard; and (3) the process used must be reasonably calculated to protect the person's property interest. *Boddie v. Connecticut,* 401 U.S. 371, 378–79, 91 S.Ct. 780, 786–87, 28 L.Ed.2d 113 (1971); *Charry v. Hall,* 709 F.2d at 145.

■ The particular process depends upon the nature of the proceedings and the interests of both the government and the individual. *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). In the matter of the licensing of physicians, the state has a substantial interest in regulating who is professionally and morally qualified to practice medicine in order to protect the health and safety of the public. *Surmeli v. New York,* 412 F.Supp. 394 (S.D.N.Y.1976), *aff'd,* 556 F.2d 560 (2d Cir. 1976). The individual physician also has a significant interest in the revocation proceedings as his livelihood and professional reputation are at stake. *Mildner v. Gulotta,* 405 F.Supp. 182, 195 (E.D.N.Y.1975), *aff'd sub nom. Levin v. Gulotta,* 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976). Yet, given all the opportunities plaintiff has had to protect his license and all the procedural safeguards built into the state's revocation procedures, it is clear to this court that plaintiff's constitutional due process rights were fully protected and plaintiff's claim to the contrary is without merit. *Foreman v. Ambach,* 525 F.Supp. 722 (S.D. N.Y.1981).

Specifically, plaintiff was given a full disciplinary hearing at which he was represented by counsel, and given the opportuni-

ty to testify, to produce evidence and to cross examine witnesses. In addition, the hearing panel's findings were specific, detailed and subject to independent review at several levels of higher authority. Plaintiff has also availed himself of state court review proceedings, first in the Appellate Division and now in the New York Court of Appeals. Any claim of denial of procedural due process under the circumstances borders on the absurd. *See Foreman v. Ambach,* 525 F.Supp. 722 (S.D.N.Y.1981).

■ It is well settled under federal and state law that due process considerations do not require the full array of procedural tools available to civil litigants be afforded to a plaintiff in an administrative hearing. *See e.g., Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Sinha v. Ambach,* 91 A.D.2d 703, 457 N.Y.S.2d 603 (3rd Dep't 1982). Nor do the technical rules of evidence apply in an administrative hearing. *Richardson v. Perales,* 402 U.S. 389, 407–08, 91 S.Ct. 1420, 1430–31, 28 L.Ed.2d 842 (1971); *Hecht v. Monaghan,* 307 N.Y. 461, 121 N.E.2d 421 (1954). In light of these prior decisions, plaintiff's allegations regarding evidentiary points do not state a claim for relief.

■ Plaintiff's allegation that the state court's refusal to stay the revocation of his license pending the outcome of the appeal, violates his due process rights is without merit. Plaintiff cites no authority nor has this court found any authority to support this proposition. Plaintiff's property right to practice medicine is not an absolute right. Unquestionably, the state has the power to revoke his license once the due process requirements of notice and opportunity to be heard have been fulfilled. *See Superintendent of Massachusetts Correctional Institution v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985). The state's legitimate and important concern of public health and safety far outweigh any interest of plaintiff to continue his livelihood. *Cf. Mitchell v. Association of Bar of City of New York,* 40 N.Y.2d 153, 386 N.Y.S.2d 95, 351 N.E.2d 743 (1976).

The final question that must be addressed is whether this case is properly before this court.

■ It is well established that under the doctrine of federal abstention, articulated in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 699 (1971) and recently reiterated by the Supreme Court in *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), a federal court is required to abstain when there is an ongoing state procedure that precludes interference. The *Younger* doctrine, though originally limited to state criminal proceedings, is now fully applicable to civil proceedings in which important state interests are involved. *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). Further, the Supreme Court has stated that *Younger* requires that a federal court abstain from interfering with pending professional disciplinary proceedings in a state court. *Middlesex Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).

■ In *Middlesex,* 457 U.S. at 432, 102 S.Ct. at 2521, the Court applied the following three prerequisites for *Younger* abstention and determined that the federal court should not interfere in the state's ongoing attorney disciplinary proceedings, if:

1. the disciplinary proceedings constitute an ongoing state judicial proceeding;

2. the disciplinary proceedings involve an important state interest; and

3. there is an adequate opportunity for the plaintiff to raise his constitutional claim in the state proceedings.

Clearly, the instant case fulfills all three requirements.

First, the state court review proceeding is obviously judicial in nature. Second, the state has a strong interest in protecting the health and safety of its citizens and the granting and revocation of physicians' licenses is clearly an integral part of this state function. For a federal court to interfere in state court proceedings and directly countermand the state court order to

revoke plaintiff's license would be extremely disruptive to the state judiciary system and would be in complete disregard of any notions of federalism and comity. The circumstances of this case do not warrant such an intrusion. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608, 95 S.Ct. 1200, 1210, 43 L.Ed.2d 482 (1974); *Lang v. Berger*, 427 F.Supp. 204, 215 (S.D.N.Y.1977). Finally, plaintiff has had the opportunity to raise all his constitutional claims in the state proceeding. *Id. See Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (strong federal policy against interference absent great immediate irreparable injury to plaintiff's constitutional rights).

For all the reasons stated above, defendants' 12(b)(6) motion to dismiss is granted.[1]

Defendants' request for attorney's fees and costs is denied. Under the standard set forth in *Hughes v. Rowe*, 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980), we do not find the plaintiff's action to be so totally meritless or groundless as to warrant an award of attorney's fees and costs.

SO ORDERED.

---

1. Although defendant did not raise the point, plaintiff is collaterally estopped from raising in federal court the claim that he was denied a fair hearing or procedural due process. These same claims were raised before and decided by the state court proceeding in the Appellate Division.

The federal court presented with a state court judgment is required to give that judgment the same force and effect as it has in the state in which it was rendered (citations omitted) ... the state court's determination is res judicata of all other actions as a matter of statutory law. The fact that a federal civil rights action is involved, moreover, is not by itself a valid reason for denying full faith and credit to the state court proceeding. (citation omitted).

*Mitchell v. National Broadcasting Co.*, 553 F.2d 265, 274 (2d Cir.1977).