Stephen H. FOREMAN, Plaintiff,

v.

Gordon M. AMBACH, individually and as Commissioner of Education of the State of New York, The New York State Board of Regents, Willard A. Genrich, J. Edward Meyer, Kenneth B. Clark, Harold E. Newcomb, Emlyn I. Griffith, Mary Alice Kendall, Jorge L. Batista, Louis E. Yavner, Laura B. Chodos, Martin C. Barell, Louise P. Matteoni, R. Carlos Carballada, Floyd F. Linton, Salvatore J. Sclafani, as individuals and as members of the New York State Board of Regents, and New York State Department of Education, Defendants.

No. 81 Civ. 1059.

United States District Court,
S. D. New York.

Oct. 29, 1981.

OPINION

EDWARD WEINFELD, District Judge.

This is the third action, the second instituted in this Court, seeking to declare void and to enjoin enforcement of an order of the Board of Regents of the State of New York (the "Board") suspending plaintiff's state license as a podiatrist for a period of ninety days and imposing a $1,000 fine upon him. The defendants are the Board of Regents, its individual members, the Commissioner of Education of the State of New York and the State Department of Education.

The plaintiff was convicted upon his plea of guilty of the crime of conspiracy in the third degree, a Class A misdemeanor,[1] in the Criminal Court of the City of New York. The initial underlying charge was that plaintiff and other podiatrists had combined and agreed among themselves and with other persons to raise a sum of money to bribe a public official with respect to legislation then pending before the New York State Legislature that would have removed podiatry from reimbursement under the State Medicaid Program. Following the entry by plaintiff of his guilty plea, the Board, after a hearing referred to hereafter, entered the order of suspension and fine. Petitioner then sought review in the Appellate Division, Third Department, which denied his petition.[2] Thereafter leave to appeal to the New York State Court of Appeals was denied.[3]

Upon the rejection of his claim by the state courts, plaintiff commenced his first action in this Court for judgment declaring the disciplinary order void as in violation of his constitutional rights to procedural and substantive due process. Judge Goettel, to whom the case was assigned, found that the plaintiff had failed to establish any viola-

Boxer, Gerst & Morse, Garden City, N. Y., for plaintiff.

Robert Abrams, Atty. Gen. of the State of N. Y., New York City, for defendants; John J. O'Grady, Asst. Atty. Gen., New York City, of counsel.

1. N.Y.Penal Law § 105.05 (McKinney 1977).

2. *Foreman v. Board of Regents*, 75 A.D.2d 953, 432 N.Y.S.2d 674 (1980).

3. 51 N.Y.2d 704 (1980). In addition to plaintiff, 13 other podiatrists were involved in the scheme to raise $100,000 in the attempt to bribe a public official. All pleaded guilty to the

crime of conspiracy and thereafter the Board imposed the same disciplinary sanction upon each as was imposed upon plaintiff. The details of the proceedings under the state statute which resulted in the sanctions are set forth in *Tartack v. New York State Educ. Dep't*, 75 A.D.2d 953, 428 N.Y.S.2d 74 (1980).

tion of his constitutional rights and dismissed his complaint upon the merits.

Plaintiff then commenced the instant action under 42 U.S.C. § 1983. Simultaneously he moved for a preliminary injunction pursuant to Rule 65(a) of the Federal Rules of Civil Procedure and the defendants crossmoved to dismiss the complaint pursuant to Rule 12(b)(6). This Court denied the motion for a preliminary injunction and dismissed the defendants' cross-motion as moot. However, the dismissal was without prejudice to any motion directed to an amended complaint which the plaintiff had served during the pendency of the hearing on the motion for injunctive relief.

The defendants now move for judgment dismissing the amended complaint under Rule 12(b)(6) and pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. In support of their motion, defendants have filed a statement pursuant to local civil rule 3(g). Since the plaintiff has not filed any response thereto, all the material allegations set forth therein are deemed admitted.[4] Upon argument of this motion, the parties stipulated that there shall be included in the instant record the testimony taken on an application for a preliminary injunction in an action instituted by other podiatrists in the United States District Court, Eastern District, seeking substantially the same relief as sought by the plaintiff herein.[5]

The amended complaint alleges that the defendants under color of law violated plaintiff's rights under the Fourteenth Amendment: (1) to the equal protection of the laws in that as a podiatrist he was subjected to disciplinary procedures different from those applied to members of the medical profession similarly situated under New York law; (2) to due process of law in that the order suspending plaintiff's license failed to contain a full and proper statement of factual findings and the reasons and purposes of its conclusions; that the members of the Board of Regents "unduly and illegally" influenced members of the Charge Committee of the State Podiatry Board by directing the Committee to bring the specifications against the plaintiff; that thereafter they and others conspired to deny him a fair hearing before the Hearing Panel which heard the charges; that the order of the Board suspending the plaintiff's license was based upon a conviction illegally obtained; that the Board failed to give appropriate consideration to the circumstances of his individual background and degree of participation in the offense, as distinguished from other podiatrists whose licenses also were suspended; and that the defendants suspended plaintiff's license for reasons much less severe than was the case in the vast majority of situations similar to his case. In addition to declaratory and injunctive relief, plaintiff seeks monetary damages against the defendants in the sum of $1,000,000.[6]

Before considering plaintiff's claims of constitutional violations, it is desirable to note the following facts set forth in defendants' 3(g) statement that are not disputed: plaintiff's conviction of the crime of conspiracy, referred to above, is still in full force and effect and has not been appealed; he was represented by counsel when he entered his plea of guilty; the Assistant District Attorney who represented the prosecution at the time plaintiff entered his

---

**4.** Local civil rule 3(g) provides in pertinent part:

The papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts as to which it is contended that there exists a genuine issue to be tried.

All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

**5.** *Dribbon v. Ambach*, No. 81–0158 (E.D.N.Y. 1981). The motion was denied by Judge Thomas C. Platt on April 24, 1981 upon the conclusion of the hearing. Record at 65.

**6.** Upon the argument of the instant motion, the Court for the first time was apprised that following the denial of plaintiff's motion for a preliminary injunction, he complied with the order of suspension. This, of course, renders moot his claim for injunctive relief, but the claim for money damages based upon alleged violation of his constitutional rights remains.

plea did not violate any of plaintiff's rights; the Board of Regents suspended and fined petitioner upon a finding that he had been convicted of the aforesaid crime; plaintiff had a full disciplinary hearing pursuant to the provisions of the Education Law,[7] at which he appeared with counsel and plaintiff had an opportunity to testify and produce evidence on his own behalf; and none of the Panel members who heard plaintiff's case were coerced in any way to render a recommendation.

█ In the light of the foregoing, any claim that plaintiff was denied due process of law because the order suspending his license and imposing the fine did not contain "a full and proper statement of factual findings and the reasons and purposes of its conclusion" borders on the absurd. The determination by the Board which accepted the Hearing Panel's finding that petitioner had been convicted of a crime under New York State law was sufficient to sustain the order of suspension.[8] The Board's finding had the virtue of simplicity and specificity—the fact of conviction was never disputed—indeed, it could not, since it is conceded that it remains of record in the State Court where the judgment of conviction was entered.[9] Moreover, due process does not require that the Board articulate the reasons for its action, particularly since the statute itself specified a state conviction as professional misconduct constituting a ground for disciplinary action and the Board's action was within authorized limits.[10]

A sufficient reason for its order of suspension and fine was the fact of conviction

of a serious crime—a conspiracy to corrupt a public official. While the Board here did not base its suspension upon the alternative ground of unprofessional conduct, New York courts have held in the instance of conviction of a crime of the type of which plaintiff was convicted that "unprofessional conduct on the part of a physician is not limited to acts directly relating to his treatment of patients.[11] In a case where a physician had pled guilty to conspiracy to obstruct justice and his license to practice had been revoked, the court, in upholding the order of revocation, stated:

Although we conclude that the finding of unprofessional conduct was warranted, we consider that, in any event, the semantics are not important and the determination was essentially and properly grounded upon the admitted facts underlying the conviction. Had the board chosen to rest its determination and the punishment of license revocation upon the conviction alone ... the discipline imposed could not, even then, be modified ... and this whether the facts be deemed to have given rise to two specifications or but one.[12]

█ We next consider plaintiff's claim that he was denied his rights under the Equal Protection clause of the Fourteenth Amendment in that as a podiatrist he was subjected to disciplinary procedures different from those applied to members of the medical profession under New York law.

The proceeding against plaintiff was instituted pursuant to § 6510 of the Education Law, which governs disciplinary proce-

7. N.Y.Educ.Law § 6510 (McKinney 1977).

8. N.Y.Educ.Law § 6509(5)(a) provides that "being convicted of committing an act constituting a crime under New York law" is professional misconduct and that any licensee found guilty of such misconduct is subject to penalties set forth in § 6511, including suspension or revocation of his license.

9. The Board specifically accepted the findings of fact of the Hearing Panel which were detailed in seven separate findings.

10. See Professional Staff.Congress v. City University, 507 F.Supp. 637, 641–42 (S.D.N.Y. 1981); Di Marsico v. Ambach, 48 N.Y.2d 576,

424 N.Y.S.2d 107, 110, 399 N.E.2d 1129 (1979); Stolz v. Board of Regents, 4 A.D.2d 361, 165 N.Y.S.2d 179, 183 (1957); cf. Arizona v. Washington, 434 U.S. 497, 517, 98 S.Ct. 824, 836, 54 L.Ed.2d 717 (1978); Finetti v. Harris, 609 F.2d 594, 599–601 (2d Cir. 1979).

11. Erdman v. Board of Regents, 24 A.D.2d 698, 261 N.Y.S.2d 634 (1965) (per curiam).

12. Erdman v. Board of Regents, supra, 24 A.D.2d at 699, 261 N.Y.S.2d at 635 (1965); see also Mosner v. Ambach, 66 A.D.2d 912, 410 N.Y.S.2d 937 (1978).

dures of thirty licensed professions and which, up to 1975, included physicians. In 1975, however, the New York State Legislature enacted Public Health Law § 230, which established partially separate procedures for the discipline of physicians. These new procedures were established as part of a comprehensive effort by the Legislature to deal with a critical threat to the availability of medical services because of the lack of adequate medical malpractice insurance at reasonable rates.[13]

The major objectives of the bill, as noted by the Governor in approving it, were to guarantee the continued adequacy of medical malpractice insurance to members of the medical profession and health providers in New York State and to assure the public the basic protection to which all patients are entitled.[14] The only significant difference between the procedure under § 6510 applicable to podiatrists and other licensees mentioned therein and that applicable to physicians under § 230 of the Public Health Law pursuant to the 1975 amendment, is that in the former the findings and recommendations of the Hearing Panel are reviewed by a Regents Review Committee which submits its recommendation to the Board of Regents, whereas in the instance of physicians the Hearing Panel's findings and recommendations are reviewed by the State Commissioner of Health, who reports his recommendations thereon to the Board of Regents. In each instance, however, the Board of Regents is vested with the final power to decide whether the licensee is guilty or not guilty of the charges and what penalties, if any, are to be imposed.

Thus, in the instance of the plaintiff, the Education Department instituted a disciplinary proceeding based upon two separate charges: (1) conviction of a crime under New York law [15] and (2) unprofessional conduct.[16] After an initial presentation before a so-called Charging Committee, consisting

of three podiatrists which authorized the filing of charges based on the two specifications, a hearing was held before a five-member peer panel of the Committee on Professional Conduct of the State Board of Podiatry at which plaintiff was represented by counsel. The Panel found plaintiff guilty of the first specification, but not guilty on the second, and recommended that no further punishment or action be taken against the plaintiff. In accordance with § 6510(3)(a) of the Education Law, their recommendations and the transcript of the hearing before them were submitted to a Regents Review Committee, which was under the duty of reviewing the record and in turn making its own recommendation to the Board of Regents. The Regents Review Committee agreed with the Hearing Panel on the first specification, that is, that plaintiff was guilty of a crime, but disagreed with its finding on the second specification that he was not guilty of professional misconduct and to the contrary, the Regents Review Committee found that the acts admitted by plaintiff's plea of guilty constituted professional misconduct.

Thereafter the Board of Regents voted to accept the finding that plaintiff was guilty of the first specification that plaintiff had been convicted of a crime; however, "based upon a more serious view of the misconduct committed" by plaintiff, that is, his conviction of the crime of conspiracy, the Regents ordered his license to practice as a podiatrist be suspended for three months and fined him $1,000 upon this specification. The Board then found that in view of its determination and the measure of discipline imposed, no determination need be made as to the second specification and that it was unnecessary to consider the Regents Review Committee's recommendation that the Hearing Panel's finding as to the second recommendation not be accepted.

13. *See* 1975 N.Y.Laws, ch. 109.

14. Governor's Memorandum on Approving L.1975, ch. 109 (May 21, 1975); *see also* Memorandum of State Executive Department, Medical Malpractice, McKinney Session Laws 1975.

15. N.Y.Educ.Law § 6509(5)(a) (McKinney 1977).

16. N.Y.Educ.Law § 6509(9) (McKinney 1977).

Based upon the foregoing procedure in contrast to that applied in the instance of a disciplinary proceeding against a physician, plaintiff postulates his claim of denial of equal protection of the laws. Plaintiff argues that review by the Commissioner of Health affords members of the medical profession greater protection since the Commissioner, as a member of the medical profession who must have at least ten years' experience in the actual practice of medicine, is more qualified to review recommendations by the Hearing Panel concerning professional misconduct of a practitioner than are members of the Regents Review Committee who are not members of the medical profession.[17] Plaintiff contends that podiatrists are "physicians and members of the medical profession"[18] so that denial to him of an intermediate review by the Commissioner of Health is a violation of his right to the equal protection of the laws, since there is no rational basis for the difference in the disciplinary procedures between those applied to doctors and those applied to podiatrists.

I find these contentions without substance and that they rest upon an erroneous assumption that licensed podiatrists are to be equated with licensed physicians. The New York statute, by its precise delineation of the function of each and the titles they may use makes that abundantly clear.[19] New York law expressly defines the practice of medicine as "diagnosing, treating, operating or prescribing for any human disease, pain, injury, deformity or physical condition."[20] Podiatry is described as "diagnosing, treating, operating and prescribing for any disease, injury, deformity or other condition of the foot or operating on the bones, muscles or tendons of the feet for the correction of *minor deficiencies and deformities of a mechanical and functional nature.* The practice of podiatry includes treating simple and uncomplicated fractures of the bones of the foot; administering only *local anaesthetics* for therapeutic purposes as well as for anaesthesia."[21]

The limits placed upon the practice of podiatry emphasize the differences between their functions and those of physicians, who are entrusted with the health, life and well-being of their patients. Indeed, as already noted, the change in the disciplinary procedure was adopted by the Legislature in an effort to solve a critical problem affecting the health and welfare of its citizens to assure the continuance of adequate medical resources and this alone constitutes a reasonable and rational basis for the separate classification of physicians. As stated by the Supreme Court:

Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The con-

**17.** Interestingly, the Board of Regents established a procedure whereby reports and recommendations of the Commissioner of Health with respect to medical discipline cases were to be handled "in the same manner as the reports and recommendations of the hearing panels in all other professions" and, accordingly, required its three-member review committee to study the documents and recommendations received from the Commissioner of Health following which the review committee made its recommendation to the entire Board. This interposition of the Regents Review Committee, although not provided for in § 230 of the Public Health Law, was upheld by the New York State Court of Appeals in *Di Marsico v. Ambach*, 48 N.Y.2d 576, 424 N.Y.S.2d 107, 399 N.E.2d 1129 (1979). This procedure obviously undermines plaintiff's argument that physicians are favored in disciplinary proceedings because of the greater expertise of the State Commissioner of Health than that of the members of the Regents Review Committee.

**18.** Brief for Plaintiff at 4–5.

**19.** N.Y.Educ.Law § 6522 (McKinney 1977):
Practice of medicine and use of title "physician". Only a person licensed or otherwise authorized under this article shall practice medicine or use the title "physician".
N.Y.Educ.Law § 7002 (McKinney 1977):
Practice of podiatry and use of title "podiatrist". Only a person licensed or exempt under this article shall practice podiatry or use the title "podiatrist" or "chiropodist".

**20.** N.Y.Educ.Law § 6521 (McKinney 1977).

**21.** N.Y.Educ.Law § 7001 (McKinney 1977) (emphasis supplied).

stitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.[22]

And in terms pertinent to the claim here made, the Court has observed:

The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. *Tigner v. Texas*, 310 U.S. 141 [60 S.Ct. 879, 84 L.Ed. 1124]. Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. *Semler v. Dental Examiners*, 294 U.S. 608 [55 S.Ct. 570, 79 L.Ed. 1086]. The legislature may select one phase of one field and apply a remedy there, neglecting the others.[23]

There were sound and substantial reasons for the Legislature's separate treatment of physicians in the disciplinary process. Moreover, even were it assumed that podiatrists are members of the medical profession, the differences in their permissible functions, as specified in the state statute, justify separate treatment in the instance of disciplinary proceedings. Separate treatment of professions within the same calling has been recognized. Thus the Supreme Court has upheld a regulation excluding osteopathic physicians from practicing their profession in a state maintained hospital which was reserved for instruction of medical students attending a state university. The Court observed that "a regulation excluding from the conduct of a hospital the devotees of some of the numerous systems or methods of treating diseases authorized to practice in Texas [is not] unreasonable or arbitrary" and "is not a denial of the equal protection of the laws."[24] Separate treatment of the legal profession has also been recognized. Thus the Court, finding grounds for the difference in standings at the bar, refused to strike down under the Equal Protection clause Kansas' denial of a resident and licensed attorney's right to practice without a Kansas associate, in Kansas courts, because although he had an office in Kansas, he regularly practiced in Missouri.[25]

Considering the life-dealing responsibility of physicians in the diagnosis, treatment and operation for any human disease, pain, injury, deformity or physical condition, the much greater education and qualifications required to obtain a license to practice medicine than is the case in the instance of other licensees, including podiatrists, the consequences of adverse disciplinary action justifies the interposition of a different protective tier for physicians in the disciplinary process. In the circumstances, the designation of the State Commissioner of Health as an intermediate reviewing authority in the instance of physicians rests upon a rational and substantial basis and not to afford podiatrists an equal or equivalent reviewing authority does not violate plaintiff's right to the equal protection of the laws.

■ Finally, plaintiff makes a broad blunderbuss charge that defendants deprived him of his right to due process of law in that they "unduly and illegally" influenced the Charge Committee by directing its members to bring specifications against him; that thereafter they conspired to deny him a fair hearing before the Hearing Panel by coercing its members to find plaintiff guilty of the charge contained in the first specification, to wit, that plaintiff had been

---

22. *McGowan v. Maryland*, 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1104–05, 6 L.Ed.2d 393 (1961).

23. *Williamson v. Lee Optical, Inc.*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955).

24. *Hayman v. City of Galveston*, 273 U.S. 414, 417, 47 S.Ct. 363, 364, 71 L.Ed. 714 (1927).

25. *Martin v. Walton*, 368 U.S. 25, 82 S.Ct. 1, 7 L.Ed.2d 5 (1961).

convicted of a crime in the State of New York. These contentions are utterly lacking in substance. As to the Charge Committee, which plaintiff equates to a grand jury which may or may not sustain the charges initiated by the State Education Department, a reading of the testimony taken at a hearing before Judge Thomas C. Platt of the Eastern District brought by podiatrists other than the plaintiff,[26] indicates that members of the Charge Committee were reluctant to find that the fourteen podiatrists who had been found guilty upon their individual pleas of guilty had in fact been convicted—this, despite the fact that the entry of the convictions had been acknowledged before the Charge Committee and that certified copies of the conviction of each had been presented to the Committee. Whether their initial reluctance was due to misguided sympathy for their fellow practitioners, sheer arbitrariness, or concern that they could be sued for participating in the disciplinary process, the Assistant Attorney General assigned to the Department of Education was fully justified in advising them that they could not disregard the fact of conviction. Indeed, as Judge Platt noted during the course of the hearing, for them not to report the fact that plaintiff and his fellow conspirators had been convicted would have been a dereliction of duty. In any event, there was no impropriety in the Assistant Attorney General attached to the Department of Education advising the members of the Hearing Panel of their duties and responsibilities.

■ As to the claim that after the charges had been formulated the defendants conspired with others to deny plaintiff a fair hearing before the Hearing Panel by forcing and coercing its members to find plaintiff guilty of the first specification, to wit, that he had been convicted of a crime in the State of New York, not a single evidentiary matter supports this serious charge of misconduct leveled against the Board of Regents and others. Other than

the averment in plaintiff's counsel's brief, which itself is without support, not the slightest factual material has been presented to sustain it or to suggest that an issue of fact exists. This charge, not sworn to, made after plaintiff's first federal suit was dismissed on the merits, is set forth in a memorandum of law by a substituted attorney that "[t]hrough confidential sources plaintiff has learned that the Hearing Panel ... was tampered with" and "the coercion of a Hearing Panel is tantamount to tampering with a jury,"[27] is sheer speculation and conjecture. Indeed, the recklessness of this charge is underscored by the defendants' unchallenged 3(g) statement that "none of the Panel members who heard the [plaintiff's] case were coerced in any way to render a recommendation."[28] What this Court said of a pro se plaintiff who made similar unsubstantiated charges in another matter bears repetition:

> But were the vague conclusory allegations contained in the complaint deemed sufficient to withstand a motion to dismiss, an unwarranted burden of defense would be placed on the movants. Thus, in the Second Circuit, complaints based on conspiracy provisions of the Civil Rights Act cannot rest on vague and conclusory allegations but must "allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." [Citations omitted]

. . . . .

Although pro se civil rights complaints must be viewed with some latitude, liberal construction of pleadings should not be permitted to override completely the rights of defendants. Plaintiff simply fails to support her allegations with any factual details that—even imaginatively considered—could connect the federal defendants to any conspiracy to deprive her of her rights or to any actual deprivation

---

26. It appears that different Charge Committees were set up in the instance of the other 14 podiatrists.

27. Brief of Plaintiff at 15–16.

28. Defendants' 3(g) statement at ¶ 11.

of her rights. The acts alleged in furtherance of the purported conspiracy are mere speculations not supported by factual averments and, in any event, are not alleged with particularity.[29]

 Plaintiff's further contention that a lesser sanction should have been imposed upon him than that imposed upon other convicted podiatrists because allegedly he played a minor role in the conspiracy is so baseless as to merit no discussion. A conspirator is a conspirator whether he plays a major role or a minor role in the illicit activity. Suspension and fine were within the Regents' authorized power and its determination gives no right to a claim for damages for violation of any constitutional right. Defendants' motion under Rule 12(b)(6) is granted, as is the defendants' motion for summary judgment, affidavits having been submitted on the application.

So ordered.

---

**29.** *Morpurgo v. Board of Higher Educ.,* 423 F.Supp. 704, 713–14 (S.D.N.Y.1976).