UNITED STATES of America and National Credit Union Administration Board, Plaintiffs,

v.

Bartholomew RIVIECCIO, Bart Development & Construction Corp., Angelo D'Acunto, King Brokerage Co., Demetrios Karelas, John Villanella, Isaac Erlich, Edmund Lee, Ian Grossfield, Milton Morganstern, Friends Realty Corp., Amber Realty Corp., 914 Eighth Avenue Realty Corp., 914 Eighth Avenue Realty Associates, Bid Realty Corp., Klem Realty Associates, Inc., Coral Realty Corp., 1113 8th Avenue Realty Corp., 305

Eighth Ave. Realty Corp., 83 Seventh Ave. Realty Corp., 512 Henry Street Associates, Inc., Rosebud Realty Corp., 434 12th Street Corp., 440 12th Street Realty Corp., 444 12th Street Realty Corp., Alpha Berkeley Corp., Beta Berkeley Corp., 437 16th Street Realty Corp., and Cinema Realty Corp., Defendants.

No. CV-86-1441.

United States District Court, E.D. New York.

March 16, 1994.

See also, 723 F.Supp. 867.

Roseanne M. Harvey, Asst. U.S. Atty., Brooklyn, NY, for plaintiffs.

Bartholomew Rivieccio, pro se.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

This is a motion for partial summary judgment by plaintiffs the United States of America (the "Government") and the National Credit Union Administration Board ("NCUAB"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, against defendants Bartholomew Rivieccio ("Rivieccio") and Bart Development & Construction Corp. ("Bart D & C").[1] The individual defendant is appearing pro se and neither he nor Bart D & C has submitted a memorandum of law or a Local Rule 3(g) Statement in opposition to plaintiff's motion.[2]

## FACTS

The underlying facts pertinent to this action were reported in *United States v. Rivieccio*, 661 F.Supp. 281 (E.D.N.Y.1987), familiarity with which is assumed. Briefly, this action stems from a conspiracy to defraud the HYFIN Credit Union ("HYFIN"). The Second Supplemental and Amended Complaint (the "Complaint") alleges that beginning on or before September, 1981 and continuing up to April 9, 1986, funds were directly and indirectly and in an illegal manner transferred from HYFIN to Rivieccio, Bart D & C, and others, and used to purchase and develop numerous real properties. Complaint, ¶ 41.

The undisputed facts reveal that in or around 1980–81, Rivieccio and others formed the Omega Realty Corp., a real estate sales and brokerage business (the "Omega Realty Group"). Pls.' 3(g) Statement, ¶ 44. In or about December 1981, Rivieccio and certain officers of HYFIN met at the offices of Omega Realty Corp. to discuss the use of HYFIN funds to acquire and develop real property. *Id.*, ¶ 52. Rivieccio and the others agreed that HYFIN money would be used to finance the purchase and construction of the properties, and that Rivieccio and certain others would select the properties to be purchased and develop them after acquisition. *Id.* Pursuant to this agreement, Bart D & C was to do the construction work on the properties to be purchased with HYFIN funds; the construction would be financed through the

---

1. Plaintiffs originally moved for partial summary judgment against defendants John Villanella and Demetrios Karelas as well. Messrs. Villanella and Karelas, however, settled with plaintiffs and the action was dismissed as to these defendants with prejudice on or about July 7, 1993, and January 26, 1994, respectively. All corporate defendants in this action, except Bart D & C and King Brokerage Co., were acquired by plaintiff NCUAB pursuant to an order of restitution in *United States v. Rivieccio*, No. 88–CR–0283. Other corporate and individual defendants named in the caption have settled with plaintiffs. Default judgment was entered against defendant Edmund Lee ("Lee") on February 10, 1988, and defendant Milton Morganstern ("Morganstern") died on April 27, 1993.

2. The Pro Se Office of the Eastern District of New York attempted to procure an attorney for defendant but was unsuccessful. In a letter dated June 29, 1993, the Pro Se Office informed defendant that "until such time as counsel is secured, it is your responsibility to represent yourself on a pro se basis to the best of your ability."

use of HYFIN funds; and the individual defendants would receive distributions from the sale of the properties upon the completion of the renovations. *Id.*, ¶ 53.

Under the laws of New York State, however, HYFIN was empowered to lend its members' monies to individual members only. *Id.*, ¶ 1. HYFIN was neither empowered to lend its members' monies to corporate entities nor was it authorized to extend credit in amounts exceeding the sum of $40,000. *Id.* In order to circumvent these legal requirements, Rivieccio and co-defendant Lee, Treasurer of HYFIN, agreed that the diversion of HYFIN funds would be accomplished by Lee creating loans in the names of fictitious individuals. *Id.*, ¶ 49. Other methods of circumventing these requirements included, but were not limited to, having checks made payable to certain corporate entities, the "Realty Corporations," but routed through the law firm escrow account of Morganstern, Vice President of HYFIN. *Id.*, ¶ 63.

Between 1981 and 1986, approximately $9 million of HYFIN funds were disbursed from HYFIN to several Realty Corporations and/or Morganstern's law firm. *Id.*, ¶ 82. This figure, as with all of plaintiffs' assertions, is not disputed. These funds were diverted by Rivieccio and others pursuant to the agreement among the individual defendants described above and in Paragraph 52 of the Government's 3(g) Statement. As of April 9, 1986, there was owing to the National Credit Union Share Insurance Fund in excess of $12 million which includes the $9 million discussed *supra* and lost interest in the amount of approximately $3 million had the HYFIN funds been distributed in a legal manner. *Id.*, ¶ 84.

There have been numerous indictments and guilty pleas stemming from these activities. In addition, on October 26, 1989, the Clerk of this Court entered a judgment in the criminal action *United States v. Bartholomew Rivieccio*, No. 88–CR–2835, which resulted from a jury verdict, convicting Rivieccio of, among other things, conspiracy to commit mail fraud in violation of 18 U.S.C. § 371 and of committing mail fraud in violation of 18 U.S.C. § 1341. Pls.' 3(g) Statement, ¶ 24, Ex. I.[3] Plaintiffs now move for summary judgment against defendants Rivieccio and Bart D & C.

## DISCUSSION

### I. *Summary Judgment Standard*

Summary judgment "shall be rendered forthwith if … there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In opposing a properly supported summary judgment motion, "an adverse party may not rest upon the mere allegations or denials of [its] pleading, but [its] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The moving party is 'entitled to a judgment as a matter of law' [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). "In assessing the record to determine whether there is a genuine issue of fact, the court is required to draw all factual inferences in favor of the party against whom summary judgment is sought." *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989).

In deciding a summary judgment motion the court need not resolve disputed issues of fact, but need only determine whether there is any genuine issue to be tried. *Eastman Mach. Co. v. United States*, 841 F.2d 469, 473 (2d Cir.1988). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant such that a jury could return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The nonmoving party, therefore,

---

**3.** This conviction was affirmed on appeal in *United States v. Rivieccio*, 919 F.2d 812 (2d Cir.1990), and on June 24, 1991, the United States Supreme Court denied defendant's petition for a writ of certiorari. *United States v. Rivieccio*, —— U.S. ——, 111 S.Ct. 2852, 115 L.Ed.2d 1020 (1991).

must come forward with facts, and not doubts, as to the veracity of the moving party's allegations: "Rule 56(e) ... requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. One of the purpose's of summary judgment, therefore, "is to isolate and dispose of factually unsupported claims or defenses." *Id.* at 323–24, 106 S.Ct. at 2552–54.

In this regard, Rule 3(g) of the Local Civil Rules for the Eastern District of New York provides in relevant part that "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." The rule also provides that,

> All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

As noted above, neither Rivieccio nor Bart D & C has submitted a 3(g) statement and therefore the factual assertions in the Government's 3(g) statement must be accepted as true.

## II. *The Fraud Claim*

■ The thirty-first claim for relief seeks money damages for the fraud upon HYFIN and its members. As this court noted in *Rivieccio,* 661 F.Supp. at 294, plaintiffs could not plead a claim for civil conspiracy on its own because there is no substantive tort of civil conspiracy in New York. *Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank,* 755 F.2d 239, 251 (2d Cir.), *cert. denied,* 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985). Instead, this claim for relief alleges that Rivieccio, Bart D & C, and others, conspired to and did defraud HYFIN and its members. Complaint, ¶¶ 93–95.

■ "New York law provides ... that a defendant may be held liable for a conspiracy to do an unlawful thing, or to do a lawful thing in an unlawful manner." *Resnick v. Resnick,* 722 F.Supp. 27, 37 (S.D.N.Y.1989).

"The overt acts producing damage to plaintiff give rise to liability, not the existence of the conspiracy itself." *Id.* "Liability of a civil conspirator depends upon whether the overt acts alleged are actionable under traditional tort theories of recovery, or whether a lawful end has been effected in an unlawful manner." *Bridge C.A.T. Scan Assocs. v. Ohio–Nuclear Inc.,* 608 F.Supp. 1187, 1193 n. 11 (S.D.N.Y.1985). In this action, the overt acts alleged are the acts committed in defrauding HYFIN and its members. The elements of common law fraud in New York are: (1) misrepresentation of a material fact; (2) falsity of that representation; (3) scienter; (4) reasonable reliance on the representation; and (5) damages. *Resnick,* 722 F.Supp. at 37 (citing *Katara v. D.E. Jones Commodities, Inc.,* 835 F.2d 966, 970–71 (2d Cir.1987)). Regarding the conspiracy element of this cause of action, "[t]o establish civil conspiracy in New York, the plaintiff must prove that the defendants intentionally participated in a common scheme with a view to its furtherance." *Caballero v. Anselmo,* 720 F.Supp. 1088, 1099 (S.D.N.Y.1989).

■ The undisputed facts regarding Rivieccio establish that both the conspiracy and fraud elements of this cause of action have been met and hence summary judgment is appropriate. Regarding the overt acts of fraud, Rivieccio was convicted by a federal jury of violating the federal mail fraud statute, 18 U.S.C. § 1341. The superseding indictment charged Rivieccio with, among other things, obtaining financing from HYFIN in an illegal manner for the purpose of the acquisition and development of real property by the Realty Corporations owned and/or controlled by Rivieccio. Specifically, the superseding indictment alleged that the financing had been unlawfully extended because, among other things, Rivieccio and his companies did not complete any loan applications and were not subject to any credit checks, the acquired properties were not the subject of any formal appraisals, and the loans themselves were not the subject of any written repayment agreements or contracts. Pls.' 3(g) Statement, Ex. J, ¶ 2(d). In consideration for the HYFIN financing, Rivieccio was charged with giving the officers of HYFIN

stock in his real estate corporations and permitting them to personally share in the financial benefits arising from the business of these corporations. *Id.,* ¶ 2(e). The criminal conviction of the mail fraud charges conclusively establishes the elements of civil common law fraud because it establishes that Rivieccio engaged in conduct designed to defraud HYFIN, including the receipt of loans without the pledging of collateral to fictitious individuals and entities. *See also* Pls.' 3(g) Statement, ¶ 59 ("In or about the spring of 1982, pursuant to the agreement described in paragraph 52, *supra,* Grossfield began to disburse Hyfin funds to defendant Rivieccio."). Ian Grossfield ("Grossfield") was Vice–President of HYFIN and pled guilty to one count of engaging in a criminal conspiracy to defraud the depositors of HYFIN in violation of 18 U.S.C. § 371, and two counts of engaging in mail fraud in violation of 18 U.S.C. §§ 2 and 1341. *Id.,* ¶ 20.

Regarding the conspiracy element, Rivieccio's conviction of conspiracy to commit mail fraud in violation of 18 U.S.C. § 371 also establishes the necessary elements of this prong of the cause of action; *i.e.,* "intentionally participat[ing] in a common scheme with a view to its furtherance." *Caballero,* 720 F.Supp. at 1099. It is undisputed, for example, that in or about December of 1981, Rivieccio and others met at the offices of Omega Realty Corp. to discuss the use of HYFIN funds to acquire and develop real property and that Rivieccio and others agreed that HYFIN money would be used to finance the purchase and construction of the properties. Pls.' 3(g) Statement, ¶ 52. Furthermore, because the allegation of conspiracy "is merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible in damages for any overt act or acts," *Grove Press, Inc. v. Angleton,* 649 F.2d 121, 123 (2d Cir.1981), Rivieccio's liability is tied to the liability of the other co-conspirators. In this case, several of the defendants have pled guilty to the conspiracy

to defraud HYFIN. *See, e.g.,* Pls.' 3(g) Statement, ¶ 22 (Grossfield, while under oath, admitted during the plea allocution that he knowingly and wilfully participated in the creation and consummation of a scheme to transfer funds from HYFIN in a manner designed to conceal from the depositors of HYFIN and state regulators the fraudulent nature of the transfers). Therefore, as the Government correctly notes, "[d]efendant Rivieccio's criminal conviction for the commission of a fraud against Hyfin and his participation in a conspiracy to defraud Hyfin render indisputable defendant Rivieccio's participation in a civil conspiracy to defraud Hyfin." Pls.' Mem. at 15. *See United States v. Podell,* 572 F.2d 31, 35 (2d Cir.1978) ("It is well-settled that a criminal conviction, whether by jury verdict or by guilty plea, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case.").[4]

■ The Government alleges, and it is not disputed, that at the December 1981 meeting discussed *supra* and in Paragraph 52 of the Government's 3(g) Statement, Rivieccio was acting on behalf of Bart D & C when he met with the other defendants to discuss the use of HYFIN funds to acquire and develop real property by the Realty Corporations. Pls.' Mem. at 16. It is also undisputed that Bart D & C received HYFIN funds for the purpose of the real estate development. Pls.' 3(g) Statement, ¶ 53 ("Pursuant to the ... agreement among the individual defendants, defendant [Bart D & C] was to do the construction work on the properties to be purchased with Hyfin funds [and] the construction work would be financed through the use of Hyfin funds[.]"). The superseding indictment in Rivieccio's criminal matter stated that "[c]ommencing sometime in 1981, the defendant BARTHOLOMEW RIVIECCIO and corporations owned and controlled in whole or in part by him ... began to acquire financing from [HYFIN] for the acquisition

---

4. The court in *Podell* cautioned that "[t]he collateral estoppel effect of a finding of guilt on a general conspiracy count is limited to the essence of the conspiracy when it cannot be determined which means were used to carry out the unlawful purpose of the conspiracy." *Id.* at 36.

In this case, however, the various guilty pleas, the superseding indictment, and the testimony at trial establish the "means [which] were used to carry out the unlawful purpose of the conspiracy."

and development of real estate in the Park Slope and Brooklyn Heights areas of Brooklyn." *Id.*, Ex. J, ¶ 1. It is undisputed that Bart D & C is owned and controlled by Rivieccio. Neither Rivieccio nor Bart D & C dispute the Government's contention that the corporation intentionally participated in the scheme to defraud HYFIN and its members for the purpose of real estate acquisition and development. Because "[a] conspirator is a conspirator whether he plays a major role or a minor role in the illicit activity," *Foreman v. Ambach*, 525 F.Supp. 722, 730 (S.D.N.Y. 1981), summary judgment against the corporation on this cause of action is appropriate.

### III. *The Conversion Claim*

■ The thirty-second claim for relief alleges that Rivieccio, Bart D & C, and others, converted and conspired to convert HYFIN's funds to their own use. Complaint, ¶¶ 96–98. The elements of a common law claim of conversion are as follows:

> [A] plaintiff must establish legal ownership of a specific identifiable piece of property and the defendant's exercise of dominion over or interference with the property in defiance of the plaintiff's rights. Intent to possess another's property is not an essential element of conversion. It is not even necessary that a converter take physical possession of the property. "Any wrongful exercise of dominion by one other than the owner is a conversion."

*Ahles v. Aztec Enterprises, Inc.*, 120 A.D.2d 903, 903–04, 502 N.Y.S.2d 821, 822 (3d Dep't) (citations omitted), *appeal denied*, 68 N.Y.2d 611, 510 N.Y.S.2d 1025, 503 N.E.2d 123 (1986).

■ As the undisputed facts outlined above establish, Rivieccio and Bart D & C wrongfully exercised dominion over HYFIN funds when they acquired those funds through fraudulent means and as part of a plan to acquire real property in the name of the Realty Corporations. It is undisputed that (i) Rivieccio was convicted of both con-

spiracy to commit mail fraud and mail fraud, Pls.' 3(g) Statement, ¶ 24; (ii) "In or about late 1981, defendant[ ] Rivieccio ... agreed to acquire and develop real property using Hyfin funds," *id.*, ¶ 46; and (iii) pursuant to the agreement among the defendants, Bart D & C "was to do the construction work on the properties to be purchased with Hyfin funds [and] the construction would be financed through the use of Hyfin funds," *id.*, ¶ 53. Rivieccio interfered with HYFIN's ownership of these funds and in defiance of the depositors' rights by, among other things, dictating the amount of funds to be disbursed and the frequency of·the disbursements. *Id.*, ¶ 61 ("Upon receiving information from Rivieccio, Lee or Morganstern as to how much money was to be disbursed, and to which realty corporations, Grossfield would create loans on Hyfin's computer system and issue checks accordingly."). As noted above, Bart D & C exercised control and interfered with HYFIN funds and in defiance of the depositors' rights when it accepted those funds in order to finance the construction of the properties. *Id.*, ¶ 53. The material issues of fact regarding the elements of the common law tort of conversion are not in dispute and hence summary judgment against both defendants is appropriate.

### IV. *The Aiding and Abetting the Breach of Fiduciary Duty Claim*

The thirty-fourth claim for relief charges Rivieccio, Bart D & C, and others with aiding and abetting Lee, Morganstern, and Grossfield, officers and directors of HYFIN, in the breach of their fiduciary duties. Complaint, ¶¶ 102–104.[5] It is undisputed that as officers and directors of HYFIN, Lee, Morganstern, and Grossfield breached their fiduciary duties to HYFIN. "Section 468–a(1) [of New York's Banking Law] requires directors and officers of credit unions to discharge their duties prudently and in good faith." *Rivieccio*, 661 F.Supp. at 294. Each of these defendants pled guilty to misfeasance while an officer or director of HYFIN. Specifically,

---

5. In *Rivieccio*, 661 F.Supp. at 294–95, the court dismissed that count of the first supplemental and amended complaint which sought to hold *all* defendants liable pursuant to New York's Banking Law, Section 468–a(2), which provides that an action may be brought against an officer or director of a credit union to compel the defendant to account for a violation of his duties. This count, however, remained in place as against Lee, Grossfield, and Morganstern. *Id.* at 295.

Lee admitted that while Treasurer of HYFIN he knowingly and wilfully became a member of and participated in a criminal conspiracy with others to defraud the depositors of HYFIN for the purpose of real estate acquisition and development. Pls.' 3(g) Statement, ¶ 8. Morganstern pled guilty to, among other things, one count of engaging in a criminal conspiracy to defraud the depositors of HYFIN in violation of 18 U.S.C. § 371 while Vice–President of HYFIN. *Id.,* ¶ 14. Grossfield, while also a Vice–President of HYFIN, admitted that he too participated in the creation and consummation of a scheme to transfer HYFIN funds in a manner devised to conceal from the depositors of HYFIN and state regulators the fraudulent nature of the transfers. *Id.,* ¶ 22.

■ In *S & K Sales Co. v. Nike, Inc.,* 816 F.2d 843 (2d Cir.1987), the court set out the "well settled" elements of a New York claim for inducing or participating in a breach of fiduciary duty:

> The claimant must prove (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that the plaintiff suffered damages as a result of the breach.

*Id.* at 847–48 (quoting *Whitney v. Citibank, N.A.,* 782 F.2d 1106, 1115 (2d Cir.1986). "Any one who knowingly participates with a fiduciary in a breach of trust is liable for the full amount of the damage caused thereby to the cestuis que trust." *Wechsler v. Bowman,* 285 N.Y. 284, 291, 34 N.E.2d 322, 326 (1941).

■ Applying these elements to this case, it is first to be noted that, as shown above, there is no dispute that Lee, Grossfield, and Morganstern breached the fiduciary duties owed to the depositors of HYFIN. Second, it is also undisputed that Rivieccio knowingly participated and induced these breaches by, among other things, meeting with all three in December of 1981, where it was agreed that Lee, Grossfield, and Morganstern would acquire stock in the Realty Corporations in exchange for their cooperation in committing the illegal act of disbursing HYFIN funds in amounts exceeding the legal limits or to person or entities either nonexistent or prohibited by law from borrowing funds from feder-

ally insured credit unions. *Id.,* ¶ 52. In fact, Rivieccio was found guilty of nine counts of bribery of bank officials (the officers of HYFIN) in violation of 18 U.S.C. § 215. *Id.,* ¶ 24. Furthermore, Bart D & C has not come forward to dispute the allegation that at the December 1981 meeting Rivieccio was acting on behalf of Bart D & C. *See id.,* ¶ 53; Pls.' Mem. at 16. Finally, it is not disputed that the Government suffered losses because of the fraudulent activities of defendants. Pls.' 3(g) Statement, ¶¶ 82–85.

The undisputed evidence, therefore, establishes that Rivieccio and Bart D & C knowingly induced the breach of the fiduciary duties owed by Lee, Grossfield, and Morganstern to Hyfin and its depositors. Summary judgment on this cause of action, therefore, is appropriate.

## V. *The Constructive Trust Claim*

■ The thirty-seventh claim for relief seeks a constructive trust upon the real properties owned by the Realty Corporations in favor of the United States of America. However, because plaintiffs acquired control of these corporations and the real properties held by them, Pls.' 3(g) Statement, Ex. A, plaintiffs now ask the court to impress a constructive trust upon the proceeds and profits of such properties and that Rivieccio and Bart D & C be required to disgorge to plaintiffs such proceeds and profits. Complaint, ¶ 110.

"A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest equity converts him to a trustee." *Beatty v. Guggenheim Exploration Co.,* 225 N.Y. 380, 386, 122 N.E. 378, 380 (1919) (Cardozo, J.). "It is agreed that the purpose of the constructive trust is prevention of unjust enrichment." *Simonds v. Simonds,* 45 N.Y.2d 233, 242, 408 N.Y.S.2d 359, 364, 380 N.E.2d 189, 194 (1978). As the undisputed facts outlined above attest, Rivieccio participated in a conspiracy to defraud HYFIN and its depositors by diverting millions of dollars to himself and the Realty

Corporations. It is undisputed that these loans were not supported by collateral or documentation, Pls.' 3(g) Statement, ¶ 59, and that the net loss to plaintiffs totals approximately $18 million, *id.*, ¶ 85. As the court noted several years ago, "[a]t a later stage, the court will be in a position to determine whether the government is entitled to the broad relief available at equity." *Rivieccio*, 661 F.Supp. at 293. The undisputed facts demonstrate that broad equitable relief is appropriate. Rivieccio and Bart D & C acquired property through fraudulent means and, pursuant to the doctrine of constructive trusts, the Government is within its right to seek disgorgement of any ill-gotten gains. *Hunter v. Shell Oil Co.*, 198 F.2d 485, 489 (5th Cir.1952) ("When property has thus been wrongfully acquired, equity converts the holder into a trustee, and compels him to account for all gains from such conduct.").

## VI. *The Unjust Enrichment Claim*

 The thirty-eighth claim for relief alleges that by their wrongdoing with respect to HYFIN, Rivieccio, Bart D & C, and others have been unjustly enriched. Complaint, ¶¶ 111–113. "To recover on a theory of unjust enrichment under New York law, a party must establish not only that there was enrichment, but that the enrichment was at the plaintiff's expense, and that the circumstances dictate that, in equity and good conscience, the defendant should be required to turn over its money to the plaintiff." *Universal City Studios, Inc. v. Nintendo Co.*, 797 F.2d 70, 79 (2d Cir.), *cert. denied*, 479 U.S. 987, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986). "A conclusion that one has been unjustly enriched is essentially a legal inference drawn from the circumstances surrounding the transfer of property and the relationship of the parties. It is a conclusion reached through the application of principles of equity." *Sharp v. Kosmalski*, 40 N.Y.2d 119, 123, 386 N.Y.S.2d 72, 76, 351 N.E.2d 721, 724 (1976).

 As the undisputed facts demonstrate, Rivieccio and Bart D & C were part of the conspiracy aimed at fraudulently diverting HYFIN funds into real estate acquisitions. It is uncontested that Bart D & C received funds to finance the construction of the projects, Pls.' 3(g) Statement, ¶ 53, and that when the properties were sold, the individual shareholders of the Realty Corporations, of which Rivieccio was one, received distributions of profits. *Id.* The Government has, therefore, established that summary judgment is appropriate against both defendants on the claim for unjust enrichment.

## VII. *The Accounting Claim*

 The thirty-ninth claim for relief seeks an accounting from Rivieccio, Bart D & C, and others as to the monies fraudulently transferred to the Realty Corporations and used by Rivieccio and Bart D & C for the acquisition and development of the properties and as to the profits derived therefrom. Complaint, ¶¶ 114–116. "[A] person who participates with a fiduciary in a breach of trust may be held to account as a constructive trustee." *Rivieccio*, 661 F.Supp. at 294 (citing *Marcus v. Marcus*, 92 A.D.2d 887, 887–88, 459 N.Y.S.2d 873, 874 (2d Dep't 1983) (per curiam). As demonstrated above, it is undisputed that Rivieccio and Bart D & C participated with Lee, Grossfield, and Morganstern in the breach of their fiduciary duties. Neither Rivieccio nor Bart D & C contest the Government's assertion that the fraudulently acquired funds came to rest in their possession. Therefore, irrespective of its efficacy, the elements for granting summary judgment on plaintiffs' claim for an accounting from Rivieccio and Bart D & C have been established.

## VIII. *Rivieccio's Opposition*

As noted above, neither Rivieccio nor Bart D & C submitted a 3(g) statement in response to plaintiffs' motion for partial summary judgment. However, in a letter to the Court dated August 17, 1993, Rivieccio writes that "summary judgment in favor of the government would be an unjust ruling." He writes that his criminal conviction should not be the basis for granting summary judgment in favor of plaintiffs because "there are material extenuating circumstances involved here, not the least of which is the fact that I testified before the Grand Jury on three

different occasions, yet was then taken to trial. My lawyer was so ineffective that the U.S. Attorney was able to make statements in his closing argument that were improperly prejudicial, and unduly influenced the outcome of the trial."

Defendant also argues that summary judgment against him would be unfair because he received more jail time than the other defendants even though he allegedly "played a far smaller role in this situation." Rivieccio also blames the Government for any losses that may have been suffered due to their refusal to allow him to complete the real estate projects. And he also states that "summary judgment would place me and my family in an impossible situation from which we might never recover" because, with approximately one year still to serve, his "business [is] destroyed, and I am completely without funds. I am the only defendant with small children; my two sons are eight years old, and at the age of 51 I will be starting over." Rivieccio writes that he does not want "the yoke of a multi-lillion [sic] dollar judgment against [him] personally" and that he would "like to start over without any hinderance." [6]

 Several observations are in order. First, irrespective of an alleged ineffective assistance of counsel defense, the evidence presented at trial, including the testimony of Grossfield, Morganstern, and Lee, and the pleas of these defendants, establish that Rivieccio and his company Bart D & C were participants in the conspiracy to defraud HY-FIN and its depositors. Second, although Rivieccio claims that he played a smaller role than the other defendants in this scheme, the evidence does not support that characterization and, in any event, as pointed out above, the size of the role of a co-conspirator is irrelevant vis-a-vis that individual's culpabili-

ty. *Foreman v. Ambach,* 525 F.Supp. 722, 730 ·(S.D.N.Y.1981). Third, whether or not the projects would have made money had the Government not interfered is irrelevant; the undisputed facts establish that Rivieccio and Bart D & C are liable for conspiracy to defraud, conversion, aiding and abetting breach of a fiduciary duty, unjust enrichment, and an accounting. Finally, this court is not without sympathy for defendant's personal situation and it understands the difficulties that await when defendant's prison time is completed. His circumstances, however, are his own making. The undisputed facts compel summary judgment in favor of plaintiffs.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for partial summary judgment against Bartholomew Rivieccio and Bart Development & Construction Corp. on the thirty-first, thirty-second, thirty-fourth, thirty-seventh, thirty-eighth, and thirty-ninth claims for relief in the Second Supplemental and Amended Complaint is granted in its entirety.

---

**6.** The court also received a letter from Rivieccio dated February 2, 1994, in which he stated that "[i]t is now apparent that no law firm may ever pick up this case." Nevertheless, defendant requested an adjournment of several months in order to retain counsel and contest plaintiffs' motion for summary judgment. "I am requesting this case be adjourned until my release [presently scheduled for November 1, 1994] so I can get proper counsel." (As in his letter of August 17, 1993, Rivieccio again alleges that his role in the conspiracy was smaller than the other defen-.

dants. "After doing all this time in jail and turning over all the properties involved in this case, I feel as though I have given more than any other defendant. I am not so sure I was the most culpable.") Rivieccio's request for an adjournment, however, was denied because after approximately eight months of unsuccessfully attempting to locate counsel for defendant, the court did not believe that a further adjournment of approximately eight to ten months would be beneficial.